In the Matter of Charges against GEORGE S. SKINKLE, a Patrolman Connected with the Police Department of the City of Watervliet, New York.*

Supreme Court, Albany County, July 18, 1927.

Municipal corporations — police — appeal under Watervliet city charter, § 148, from decision of commissioner of public safety, convicting appellant of misconduct as police officer and dismissing him from force is appeal on merits — conviction of appellant was not warranted . by evidence and appellant is reinstated.

The appellant, a patrolman of the police department of the city of Watervliet, was convicted on a trial before the commissioner of public safety for misconduct unbecoming an officer and was dismissed from the police force. An appeal taken under section 148 of the Watervliet city charter on jurisdictional grounds is an appeal on the merits and the trial of the appellant may be reviewed by the court.

An examination of the evidence in support of the charges against the appellant shows that the prosecution failed to establish that the appellant was guilty of misconduct unbecoming an officer of the police force, and, therefore, the appellant's conviction is reversed and he is reinstated in his position with full pay from the date of suspension.

APPEAL from a decision of Robert J. Murray, commissioner of public safety of the city of Watervliet, convicting George S. Skinkle, a patrolman, of misconduct unbecoming an officer and dismissing him from the police force and fining him all accrued pay.

*Tobin, Wiswall, Walton & Wood* [*Kenneth MacAffer* of counsel], for the appellant.

*Joseph D. Foley, Corporation Counsel,* for the respondent.

NICHOLS, J. Section 141 of chapter 462, Laws of 1918, constituting the charter of the city of Watervliet, provides for the appointment of a commissioner of public safety. It also provides for filling the position of the commissioner in case of the

commissioner's absence or disability. By section 147 of said chapter he is given power to try a member of the police force who is guilty of some delinquency seriously affecting his general character or fitness for the office. There are other cases in which he may try members of the police or fire departments. The charges must be in writing in a prescribed form and a copy must be served on the accused officer or member. Section 148 of said charter provides as follows:

" § 148. Appeal from determination of commissioner. In each any such officer or member is aggrieved by the determination of the commissioner on any trial of charges as specified in the preceding section, on jurisdictional grounds, he may, within thirty days after the rendering of such determination, take an appeal therefrom to the supreme court, at any special term thereof, held within the judicial district in which the city is situated. Upon such appeal the decision of the court shall be final and conclusive. An appeal taken, as prescribed herein, shall be perfected by the service of a notice of appeal upon the commissioner. He shall, within ten days thereafter, make and file with the county clerk of Albany county a complete return of the proceedings on such trial, for the use of the parties and the court on such appeal."

It is the claim of the appellant that the appeal on " jurisdictional grounds " to the Supreme Court is not made on the ordinary meaning of the word " jurisdictional," which in the case at bar would simply mean the making of a charge in writing against the appellant and the service thereof on the accused officer; but that " jurisdictional " really means one or more of the offenses set forth in section 147 of the act and means an appeal on the merits on such trial. It seems to me that this must be the meaning of this act. I cannot make myself believe that the Legislature intended that the Supreme Court at a Special Term thereof should be called upon to determine whether charges in writing against an officer for any of the offenses specified in section 147 had been filed and a copy thereof had been served on the accused officer; it rather seems to me, taking the two sections together and the further provisions of section 148, " upon such appeal the decision of the court shall be final and conclusive," especially in connection with the final language of the section, " an appeal taken, as prescribed herein, shall be perfected by the service of a notice of appeal upon the commissioner. He shall, within ten days thereafter, make and file with the county clerk of Albany county a complete return of the proceedings on such trial, for the use of the parties and the court on such appeal," that there is no apparent reason why, if the trial is not to be reviewed, a complete return of the proceedings should be had. I, therefore,

hold that the term "jurisdictional grounds" in said section means an appeal upon the merits.

February 6, 1927, the appellant Skinkle, for many years a member of the police force of the city of Troy, at or just before the hour of six o'clock P. M., was on reserve at police headquarters at that time in charge of Sergeant Noller of said force, and being on reserve did not have on his uniform, as was the custom in the police department. A man by the name of James Quinn was a boarder at the boarding house at 2401 Broadway in said city operated by a woman by the name of Guerin, a widow, who had a son by the name of Leo Guerin, a young man of about seventeen years of age. February sixth was Sunday. Quinn was intoxicated. He had been very ugly and abusive toward Mrs. Guerin and she being afraid of Quinn, sent her son to the police station to get an officer to eject Quinn. An officer was dispatched on this errand but before he arrived at Mrs. Guerin's house, Quinn had left and the officer went away. A short time afterwards Quinn returned still intoxicated and a telephone call was sent to the police station for an officer; the officer on duty could not be located by the sergeant at the time and he directed Skinkle, who was not on duty at the time, to go and eject Quinn. What occurred at the house after his arrival is a matter of controversy, Skinkle claiming that Quinn assaulted him when he told Quinn to leave and that in self defense. he did strike Quinn with his club or billy and took him to the station house where he preferred charges against him for disorderly conduct and for assaulting an officer and Quinn was locked up for the night. Skinkle of course had no warrant for Quinn's arrest; Quinn subsequently plead guilty to disorderly conduct; the charge of assaulting an officer was not pressed and Quinn was permitted to go at large and about ten or twelve days later died from some sort of infection; whether as a result of the wound inflicted by Skinkle's club or not does not appear on the trial. After Quinn's death proceedings were had before a magistrate of the city of Watervliet and Skinkle was held for action of the grand jury and these charges were filed against Skinkle; a trial was had before the commissioner of public safety. The hearings were had on March 23 and 30, 1927; no decision was rendered until April 27, 1927, but in the meantime the commissioner of public safety had suspended Skinkle without pay. This was in violation of section 143 of the charter of the city of Watervliet which provides that the accused officer may have his pay suspended during a fixed period of dismissal from office. The section still further provides that no officer shall be removed or otherwise punished until charges in writing have been preferred against him and and he found guilty thereof. The commissioner

having suspended Skinkle without pay, a mandamus order issued by myself at Special Term was made which required the city to pay Skinkle until he had been dismissed after a trial pursuant to the provisions of said charter. From that mandamus order an appeal was taken to the Appellate Division where it was affirmed July 1, 1927. (*Matter of Skinkle* v. *Murray*, 221 App. Div. 301.) Upon the motion for the mandamus order Commissioner Murray made an affidavit setting forth as true the various facts hereinbefore set forth without any modification that they were made on information and belief; and this the appellant Skinkle claims is contrary to the theory of a court conducting a trial and is one of the grounds assigned as error on this appeal. While I think Commissioner Murray was authorized to conduct the trial, as there is nothing in the act which forbids him to do so, yet under the provisions of the charter the mayor could have appointed a deputy to conduct the trial against whom no claim could have been made that he was prejudiced or determined to uphold his prior acts in the matter. And it is worthy of note in this connection to state that the commissioner besides dismissing Skinkle from the force, fined him the amount of his pay from February 18, 1927, in defiance of the order of the Supreme Court and which order was then stayed by the appeal to the Appellate Division; and while this act of the commissioner could not deprive Skinkle of the fruits of the mandamus order as affirmed by the Appellate Division, it casts some light on the state of the commissioner's mind toward Skinkle under the circumstances of the trial that was had.

It is also worthy of note in this connection that the charges filed against Skinkle state that he, being without a warrant and not being in uniform had committed the acts complained of; and in the decision filed the commissioner, among other things, states " that Skinkle being without a warrant and not being in uniform," etc., while the testimony of Sergeant Noller shows that he had directed Skinkle to go to the house and restrain Quinn. Noller knew that Skinkle had no warrant and was not in uniform. And Skinkle had a right to arrest Quinn for a misdemeanor committed in his presence without a warrant; and this the commissioner from the nature of his position well knew. This also shows the state of mind of the commissioner toward Skinkle. Upon the trial Mrs. Guerin and her son testified against Skinkle. The evidence of each one was more or less impeached by admissions made by themselves in the Magistrate's Court on the hearing in which Skinkle was held for the grand jury and which hearing was held before the trial before Commissioner Murray. The son admitted of having been

convicted of the crime of impersonating an officer in a brothel in Troy. Skinkle, sworn as a witness, testified that he used no more force than was necessary to subdue Quinn who assaulted him without any cause or provocation when he ordered Quinn to leave the premises 2401 Broadway. And it is significant in this connection that although Quinn was taken before the magistrate where he pleaded guilty of the offense of disorderly conduct, he at no time claimed that he had been assaulted by Skinkle and when charged with assaulting an officer said that he did not know that Skinkle was an officer. Several police officers testified to conversations with Quinn, including the doctor who attempted to treat the wound on Quinn's head, and all of them testified that Quinn made no complaint to them of Skinkle having assaulted him.

Under these circumstances it seems to me that the prosecution failed to bear the burden of proof required and that the judgment of conviction of the commissioner of public safety should be reversed, with costs, and I so direct, and that appellant be reinstated in his position with full pay therefor from February 18, 1927.